IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

ROBERT KIRBY by his parents,
FRANK KIRBY and THERESE KIRBY and
FRANK KIRBY, individually, and
THERESE KIRBY, individually,

                Plaintiffs,

v.                                                CIVIL ACTION NO. 3:05-0322

CABELL COUNTY BOARD OF EDUCATION and
WILLIAM A. SMITH, Superintendent,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is the plaintiffs' motion to admit additional evidence. For the reasons set forth herein, the motion is **GRANTED**.

**I.    Factual Allegations and Procedural Background[1]**

The plaintiffs, Frank and Therese Kirby, are the parents of Robert Kirby. Robert was sixteen years old and in the tenth grade at Huntington High School in Cabell County, West Virginia when the proceedings giving rise to this suit began. Robert has been diagnosed as having a non-verbal learning disorder with Asperger Syndrome, Attention Deficit Disorder (ADD), a speech and language disorder, Dysgraphia, and specific learning disabilities in reading, written language, and

---

[1] The facts summarized are taken from the plaintiffs' complaint.

math. He was first identified with learning difficulties in kindergarten and has been receiving services since that time. During the 2003-2004 school year, Robert was served part-time in regular education classes and part-time in special education classes. In those special education classes Robert received instruction in a self-contained classroom for reading, writing, social skills and study skills. During that year, Robert also had the services of a full-time aide who accompanied him continuously throughout the school day, both in and out of the classroom. Additionally, his Individual Education Plan (IEP) included numerous other accommodations such as re-testing on any test on which he scored below a C, modifying tests to reduce the number of overall questions as well as the number of possible correct answers to a question.

Robert also had numerous independent evaluations between 2001 and the present. These evaluations led to the diagnosis that Robert has both ADD and Asperger Syndrome. The evaluations also highlighted Robert's deficits in the areas of reading, writing, math and spelling. Two of the evaluations, February and March, 2004, were conducted by Margaret Kay, Ph.D. Dr. Kay provided the plaintiffs and the district with a 52-page report of her findings which included a diagnosis of Asperger Disorder, Mathematics Disorder, Disorder of Written Expression, Phonological Disorder, Learning Disorder NOS (non-verbal), and Reading Disorder. She opinioned that a child diagnosed with Asperger's should be properly categorized as Autism Spectrum Disorders to be sure to receive the appropriate services through the Special Education program. Additionally, Dr. Kay recommended that Robert be placed in a residential special education setting, specifically the Pathway School in Pennsylvania. The district did not agree with Dr. Kay's recommendations and did not find Robert eligible for the services provided to an Autistic child.

On or about May 14, 2004, the plaintiffs requested, in writing, placement of Robert at the Pathway School. They also sought reimbursement for Dr. Kay's March, 2004 evaluation, the cost of the private tutoring Robert was receiving at Marshall University, as well as the cost of Robert's glasses which were broken in an altercation with another student. The plaintiffs' requests were denied by the district at a May 26, 2004 IEP meeting and formally in a letter dated May 27, 2004.

As a result of the denial of their request, the plaintiffs filed a request for a due process hearing on July 20, 2004. In their request the plaintiffs allege, in part, that the Cabell County Board of Education failed to provide Robert with a free appropriate public education (FAPE), that Robert's placement in the public school was likely to cause him harm, that Robert's 2003-2004 IEP was not reasonably calculated to provide Robert with an educational benefit, and that the district failed to provide comprehensive evaluations in all suspected areas of disability. The due process hearing was held on September 15-17, 2004, and October 25-26, 2004. The Impartial Hearing Officer (IHO) issued her decision on December 21, 2004.

In her decision the IHO found, in part, that the there was insufficient credible evidence that the benefits Robert receives at the public high school would be outweighed by the benefits he may receive in a residential placement; that the independent evaluations conducted by Dr. Kay were the subject of another due process proceeding and thus would not be addressed; that there was insufficient evidence to justify reimbursement of the cost of Robert's tutoring or his broken glasses; and finally the IHO resolved the issues surrounding the IEP in favor of the school district. Additionally, the IHO set out a list of directives for implementation that included objective standardized testing and additional IEP meetings.

An IEP meeting, attended by the plaintiffs and their counsel, was held within the time period set forth by the IHO; however, the plaintiffs allege that the meeting did not comply with the directives of the IHO. Specifically, the plaintiffs argue that the testing performed by the district's psychologist was inadequate. The IEP was subsequently adjourned and additional testing was to be performed. At the time of the filing of the plaintiffs' complaint, a new IEP meeting had yet to be scheduled.

The plaintiffs filed the instant complaint on April 18, 2005, seeking declaratory and injunctive relief. In their complaint the plaintiffs' allege that the IHO erred in failing to find that placement in a residential facility, the Pathway School, was appropriate (Count I); that the IHO erred in holding that the plaintiffs' had the burden of proving Robert could not make any progress unless he was provided with a 24-hour residential treatment placement and in finding that the plaintiffs failed to make such a showing (Count II); that the IHO erred in failing to find that the Pathway School is an appropriate placement for Robert (Count III); that the IHO erred in failing to find that the school system had not and could not provide Robert with more than a de minimus educational benefit (Count IV); that the IHO erred failing to find that Robert would be harmed by continued placement in public school (Count V); that the IHO erred in failing to find to award reimbursement for the cost of Dr. Kay's evaluations (Count VI); that the IHO erred in failing to reimburse the plaintiffs for the cost of the tutoring at Marshall University (Count VII); that the IHO erred in failing to reimburse the plaintiffs for the cost of Robert's broken glasses (Count VIII); that the board of education failed to comply with and carry out the directives for implementation in the IHO's December 21, 2004 decision (Count IX). Following the filing of the administrative record, the plaintiffs' filed the instant motion to introduce additional evidence.

**II.     Analysis**

The Individuals with Disabilities Education Act (IDEA or Act) was created to "assure that all handicapped children have available to them...a free appropriate public education which emphasizes special education and related services designed to meet their unique needs, [and] to assure that the rights of handicapped children and their parents or guardians are protected." *Doe v. Alfred*, 906 F.Supp. 1092, 1095 (S.D.W.Va. 1995) (quoting *Honig v. Doe*, 484 U.S. 305, 309 (1988)) (citations omitted).  Under the IDEA, Congress left the primary responsibility for teaching children and formulating policy to the state and local education authorities. *Springer v. Fairfax County School Board*, 134 F.3d 659, 666 (4th Circuit 1998) (citing *Board of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 208 (1982)).  The Act recognizes "that the courts lack the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *Id.* (quoting *Rowley*, 458 U.S. at 208) (citations omitted).   Therefore, an aggrieved party may only bring a claim in district court after availing themselves to the administrative process established under the Act.

Once a party brings a claim in district court, in relation to the evidence considered, the IDEA provides:

> In any action brought under this paragraph the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

20 U.S.C. § 1415(e)(2).  Given the purpose of the IDEA and the limited role the courts play in enforcing the provisions of the Act, many courts have taken a strict approach in allowing the admission of additional evidence under 20 U.S.C. § 1415(e)(2).  The Fourth Circuit Court of

Appeals in *Springer v. Fairfax County School Bd.* joined in that strict interpretation. It adopted the view of the First Circuit:

> We construe "additional" in the ordinary sense of the word...to mean supplemental. Thus construed, this clause does not authorize witnesses at trial to repeat or embellish their prior administrative hearing testimony; this would be entirely inconsistent with the usual meaning of "additional." We are fortified in this interpretation because it structurally assists in giving due weight to the administrative proceedings, as *Rowley* requires.

*Id.* at 667 (quoting *Town of Burlington v. Dept. of Educ.*, 736 F.2d 773, 790 (1st Cir. 1984) (citations omitted). "[T]he exclusion of 'testimony from all who did, or could have, testified before the administrative hearing' would be 'an appropriate limit in many cases.'" *Id.* at 667 (quoting *Town of Burlington.*, 736 F.2d at 790). The Court of Appeals further reasoned that a more "lenient standard for additional evidence would have the consequence of making the whole IDEA process more time consuming, as parties scrambled to use the federal court proceeding to patch up holes in their administrative case" and such delay is not to the benefit of students. *Id.*

In this case, the plaintiffs seek to admit evidence that was developed subsequent to the due process hearing and as such was not available for consideration by the IHO.[2] In contrast, the plaintiffs in *Springer* sought to admit evidence that they purposely withheld from the due process hearing and attempted to then introduce in their federal case to bolster their claim. The evidence the

---

[2]The following is the evidence the plaintiffs wish to introduce: IEP developed on February 25, 2005, May 5, 2005, and May 24, 2005; tapes and transcripts from those IEP meetings; Written evaluations and testimony of Dr. Kay in relation to March 31, 2005 evaluation; Written evaluations and testimony of Robert Burell, school psychologist, in relation to an undated evaluation and May 4, 2005 evaluation; Letters from Elizabeth Evans, Robert's treating psychologist, dated March 13, 2005, and May 20, 2005; Testimony of Elizabeth Evans; Letters from the plaintiffs to the district dated May 25, 2005; Prior written notices of the plaintiffs from the district dated March 2, 2005, May 27, 2005, and June 14, 2005; West Virginia writing assessment of Robert dated February 28, 2005; the testimony of the plaintiffs, Manifest determination check list dated February 16, 2005; and a letter from the Pathway School dated June 24, 2005.

plaintiffs wish to admit in this case is, in its very nature, supplemental. The plaintiffs do not wish to repeat or embellish evidence already given at the due process hearing. Instead, the plaintiffs' evidence was developed following the hearing and in direct response to the decision of the IHO.

At the conclusion of the due process hearing, there was still no clear plan as to Robert's future. Instead, in her directives for implementation, the IHO ordered objective standardized testing to measure Robert's mastery of specific subject matter. The information gained from the testing was to be used to determine what kind of educational plan Robert needed. The plaintiffs' evidence of test results, evaluations, and assessments all stem from the directives for implementation set forth by the IHO. They did not withhold this evidence at the due process hearing for the purpose of bolstering their case upon appeal. Rather, the evidence the plaintiffs wish to admit further helps to answer the underlying, important question of what kind of plan is necessary to meet Robert's unique educational needs. The Court finds that the plaintiffs' evidence is additional under 20 U.S.C. § 1415(e)(2) and does not fall within the strict interpretation set forth in *Springer*.

Additionally, the defendants contend that the complaint and additional evidence relate to the implementation of the decision of the IHO and as such are barred because the plaintiffs have not availed themselves to the established administrative procedure. While, generally, a plaintiff must exhaust the available administrative procedure prior to bringing a claim, there are exceptions. *Doe v. Alfred*, 906 F.Supp. at 1097. Specifically, a party does not need to exhaust the administrative remedies available if they are able to show one of the following: "(1) such process would be inadequate or futile; (2) the grievance challenges generally applicable policies that are contrary to law; or (3) exhaustion will work severe harm upon the litigant." *Id.*

The plaintiffs' complaint and the additional evidence are centered on the desire to make sure that Robert's disabilities and educational needs are properly diagnosed and adequately addressed by the district. This has been the central question throughout numerous evaluations, IEP meetings, and due process hearings. Determining if the directives of the IHO were carried out, whether addressed through an administrative procedure or by this Court, would ultimately lead back to the question of what is needed to adequately address Robert's educational needs. It would not only be futile but also a waste of administrative and judicial resources to make the plaintiffs go back through the same administrative procedure to ultimately address the exact question before the Court. Additionally, to require the plaintiffs to go back through a lengthy administrative procedure to complain about the implementation of the IHO's directives would be inadequate given Robert's age and the length of time the current complaints of the plaintiffs have been unresolved. Therefore, the Court rejects the defendants' exhaustion argument.

**III. Conclusion**

For the reasons stated, the plaintiffs' motion to admit additional evidence is **GRANTED**. The Court **DIRECTS** the Clerk to send a copy of this Written Opinion and Order to counsel of record and any unrepresented parties.

ENTER: December 14, 2005

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE