IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

**HUNTINGTON DIVISION**

ROBERT KIRBY by his parents,
FRANK KIRBY and THERESE KIRBY and
FRANK KIRBY, individually, and
THERESE KIRBY, individually,

                Plaintiffs,

v.                                      CIVIL  ACTION  NO.  3:05-0322
                                        (consolidated with 3:03-0320)

CABELL COUNTY BOARD OF EDUCATION and
WILLIAM A. SMITH, Superintendent,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Robert Kirby and his parents, Frank and Therese Kirby, have instituted two separate actions following two administrative hearings before the West Virginia Department of Education, challenging the decisions of Independent Hearing Officers (IHOs).[1]  The Court has consolidated the actions for review. The parties submitted cross-motions for summary judgment and provided oral argument.  For the reasons stated below, the Court **GRANTS in part** Plaintiffs' Motion for Summary Judgment, **GRANTS in part** Defendants' Motion for Summary Judgment and **DENIES** the balance of each cross-motion.  The Court **REAFFIRMS** its prior Order directing the parties to

---

[1]These actions were originally brought by Frank and Therese Kirby, as the parents of Robert Kirby, and by Frank and Therese Kirby individually.  During the course of these proceedings, Robert Kirby reached the age of majority and in an Order dated August 3, 2006, the Court granted the plaintiffs' motion to join Robert Kirby as a party.

develop a new IEP consistent with this Memorandum Opinion and **RETAINS** jurisdiction pending its completion.

## I.
## Free and Appropriate Public Education

The Individuals with Disabilities Act (IDEA or Act) was enacted by Congress to "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living." 20 U.S.C. § 1400(d)(1)(A).   In exchange for federal education  funding, states must provide disabled children between the ages of three and twenty-one with a free and appropriate public education (FAPE).  20 U.S.C. § 1412(a)(1)(A).

The state is required to tailor the FAPE provided to the unique needs of each eligible child by the development of an individualized education program (IEP). 20 U.S.C. § 1412(a)(4); *Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 182 (1982).  The IEP is a written document, prepared by an "individualized education program team" or "IEP Team" that consists of the child's parents or guardian,  a qualified representative of the local educational agency, at least one of the child's regular teachers, at least one of the child's special education teachers, and, where appropriate, the child. 20 U.S.C. § 1414(d)(1)(B).  The IEP must contain:

> (1)    the child's present levels of academic achievement and functional performance;
>
> (2)    measurable annual goals;
>
> (3)    criteria for evaluating whether the child is making progress towards meeting the annual goals;
>
> (4)    the special education and related services that will be provided to help the child reach the annual goals, including

the projected beginning date of the services as well as the frequency, location, and duration of those services. Additionally, those services should be based on peer-reviewed research to the extent practicable;

(5)     an explanation for the extent to which the child will not participate with nondisabled children in a regular class;

(6)     any individual modifications in the administration of state assessments of student achievement;

(7)     beginning not later than the first IEP to be in effect when the child is 16, appropriate measurable postsecondary goals and the transition services needed to assist the child in reaching those goals; and

(8)     beginning not later than 1 year before the child reaches the age of majority under State law, a statement that the child has been informed of the child's rights under this chapter, that will transfer to the child on reaching the age of majority.

20 U.S.C. § 1414(d)(1)(A).  Additionally, the child's IEP is required to be reviewed at least annually, to determine whether the goals for the child are being achieved, and revised as necessary. 20 U.S.C. § 1414(d)(4)(A).

The IDEA was enacted "more to open the door of public education to handicapped children on appropriate terms than to guarantee any particular level of education once inside." *Rowley*, 458 U.S. at 192.  While a state is required to meet the unique needs of each child, the FAPE provided must only be reasonably calculated to provide some educational benefit. *Rowley*, 458 U.S. at 200; *see also Bd. of Educ. of the County of Kanawha v. Michael M.*, 95 F.Supp.2d 600, 606-607 (S.D.W.Va. 2000).  However, though the Act does not require providing every available service necessary to maximize a disabled child's potential, "a school district cannot discharge its duty...by providing a program that provides only de minimis or trivial academic advancement." *Michael M.*, 95 F.Supp.2d at 607 (citing *Carter v. Florence County Sch. Dist. Four*, 950 F.2d 156, 160 (4th Cir.

-3-

1991)).  Additionally, the Act intends that the disabled child will receive an education, where possible, in public schools and by participating as much as possible in the same activities as nondisabled children.  *School Committee of Town of Burlington, Mass. v. Department of Educ. of Mass.,* 471 U.S. 359, 369 (1985).  Where that is not possible, the Act does allow for private school placement at public expense.  *Id.*; see also 20 U.S.C. 1412.

## II.
## Factual and Procedural Background

Robert is an eighteen year-old Cabell County, West Virginia young man who has been receiving special education services since entering the  public school system twelve years ago.  He has been in the Cabell County school system and receiving services since the fourth grade.  Robert has been diagnosed with a non-verbal learning disorder and/or Asperger's Syndrome, Attention Deficit Disorder (ADD), a speech and language disorder, Dysgraphia, and specific learning disabilities in reading, written language, and math.  The school system and Robert's parents have had a long history of disagreements as to Robert's areas of exceptionality, his IEPs, evaluations and other matters.  The parents have filed over thirty complaints or due process hearing requests against the Board.

The Cabell County Board of Education (the Board) requested a due process hearing in April, 2003, concerning its refusal to pay for an independent evaluation..  The hearing officer, in a decision dated March 17, 2003, found that the evaluation obtained by the Local Education Authority (LEA) was appropriate and the parents were not entitled to an independent evaluation at the expense of the Board.  The parents, in a pro se complaint filed in this Court on April 10, 2003, challenge the findings

of the hearing officer.  Because the plaintiffs were pro se, the case was referred to the magistrate judge for findings and recommendations.[2]

Subsequently, following the development Robert's IEP for the 2004-2005 school year, the parents, principally  asserting that the Board  failed comply with the requirements of the IDEA, requested a due process hearing.  The IHO, in an administrative decision dated December 21, 2004, found, in part, that except for the documentation of present levels of performance, the IEP was appropriate and reasonably calculated to provide Robert with an educational benefit.  The parents again, on April 18, 2005, filed a complaint in this Court challenging the findings of the IHO.  At issue before the Court are the 2003 and 2004 decisions of an IHO following two separate due process hearings.

**A.      March 17, 2003 IHO Decision**

In August, 2001, the parents and the Board entered into a mediation agreement, which in part required Robert to have a comprehensive neuropsychological evaluation.  The mediation agreement provided that the parents would provide the Board with a list of three neuropsychologists from which the Board would chose one to evaluate Robert.  After entering into the mediation agreement, the parents arranged for Robert to be evaluated by Dr. Martin L. Boone in Morgantown, West Virginia. The special education director informed the parents that the evaluation by Dr. Boone did not comply with the mediation agreement.  Finally, in October, 2001, the parents sent the Board a list of three neuropsychologists.  On November 6, 2001, the Board selected Dr. James D. Petrick from the list to

---

[2] For reasons unknown to the Court, this earlier case languished for an undue period.  The Court regrets that the parties did not receive a prompt resolution of the matter.

perform the comprehensive neuropsychological evaluation.  However, the parents failed to make an appointment with Dr. Petrick.  Instead, in February, 2002, the parents requested an independent "behavioral evaluation" of Robert at the school district's expense.

In response to the request for a behavioral evaluation, the Board requested a due process hearing.  The parents were represented by an attorney in the due process proceeding.  On April 18, 2002, the parents' attorney negotiated a settlement agreement with the Board which provided in part that Robert would have a neuropsychological evaluation by Dr. Thomas Linz.[3]  The Board filed a due process complaint on August 16, 2002, to compel the parents to comply with the provisions of the settlement agreement and make Robert available for a neuropsychological evaluation by Dr. Linz. The IHO, in a decision dated September 30, 2002, ordered the parents to have Robert attend a comprehensive neuropsychological evaluation by Dr. Linz.

Robert was evaluated by Dr. Linz on October 24 and November 13, 2002.  Subsequently, IEP meetings were held on December 12, 2002, and January 10, 2003.  Following these meetings, on January 13, 2003, the parents, believing that Dr. Linz's evaluation did not provide the IEP Team with the information necessary to develop and appropriate IEP, requested an independent neuropsychological evaluation at public expense.  In response, the Board district requested a due process hearing to determine whether the evaluation of Dr. Linz was appropriate.  The IHO held a hearing on February 3, 2003.  Prior to the decision of the IHO, the parents arranged to have Robert evaluated by Margaret Kay, PhD.  The IHO issued a decision on March 17, 2003, that the evaluation of Dr. Linz was appropriate and therefore, the parents were not entitled to an independent evaluation

--------

[3]The parents argued at the September, 2002, due process hearing that their attorney did not have the authority to enter into the settlement agreement.

at public expense.  The parents filed a pro se complaint in this Court on April 10, 2003, to challenge the findings of the hearing officer.

**B.**     **December 21, 2004 IHO Decision**

In April 14, 2004, Robert's IEP Team convened to develop an IEP for Robert for the 2004-2005 academic year.  At the time, Robert was 16 and preparing to enter the 11th grade during the 2004-2005 academic year.  Following the initial meeting, in a letter dated May 15, 2004, the parents wrote to the Board requesting:

1.     Robert be placed in a Special Education Residential Program, specifically the Pathway School in Pennsylvania;

2.     Reimbursement for the cost of private tutoring Robert received through the Marshall University HELP Program from June, 2003, to May, 2004;

3.     Reimbursement for the costs of a March, 2004 evaluation performed by Dr. Kay;

4.     Reimbursement for the cost of Robert's broken glasses;

5.     Provide one hour of tutoring per day throughout the 2004 summer through the Marshall University HELP program;

6.     Provide pragmatic language services by a Speech Language Pathologist; and

7.     Provide direct occupational therapy services for handwriting and typing on Robert's IEP.

The IEP Team reconvened on May 19 and 26, 2004, to complete Robert's IEP.  Mr. Kirby, during the May 19, 2004 meeting provided the IEP Team with a copy of Dr. Kay's March, 2004 evaluation of Robert and expressed their desire to have Robert placed at a private residential placement.  The Board denied the Kirby's request and on July 19, 2004 the Kirbys requested a due

process hearing.  In their request, the parents alleged that the 2004-2005 IEP "is not reasonably calculated to provide Robert with an educational benefit, fails to provide for services in all known areas of disability and that  placement in the public school in inappropriate and will cause Robert harm."  Letter to Dee Braley, Director of Special Education, from Frank Kirby dated July 19, 2004. The parents also allege that the Board failed to provide appropriate comprehensive evaluations of Robert and failed to follow the recommendations provided by the independent evaluators obtained by the parents.  The parents requested the service outlined in their May 15, 2004 letter to the Board. The Board declined and another due process hearing ensued.

The IHO conducted a hearing over the course of five days in the fall of 2004.  Following extensive testimony and evidence, the IHO issued her decision on December 21, 2004.  The IHO ordered:

> 1.  That because both federal and state law requires that a student's IEP must be designed to offer the student some educational benefit and that the necessary special education, regular education with modifications and supplemental aids and services must be documented by the IEP, the student's IEP for he 2004-2005 school year was appropriate except for the documentation of present levels and reasonably calculated to provide him educational benefit;
>
> 2.  That the least restrictive environment for this student remains the public high school with the special education and related services as noted on his IEP;
>
> 3.  That the county school's evaluations and the neuropsychological evaluation done by order of a prior due process hearing decision were sufficient to assess the student's abilities, his weaknesses and strengths and his performance (although they are not in agreement with the conclusions of the parents' expert) and therefore do not provide justification for reimbursement of the IEEs obtained by the parents;

> 4. That there was insufficient evidence introduced to justify reimbursement for the cost of the broken eye glasses or the Wilson reading method tutoring unilaterally obtained by the parents for the student through Marshall University.

IHO Decision dated December 21, 2004 at 20.  The IHO also ordered the following Directives for Implementation:

> 1. The county school system must immediately arrange for objective standardized tests for measuring the student's mastery of specific subject matter and administer or arrange for administration of these test, all to be completed within thirty (30) school days of the entry of this Order;

> 2. The county school system is directed to promptly review and follow-up to determine the effect the results of these objective tests may have on the student's educational program; and

> 3. The county school system is directed to proceed with any changes needed to the student's IEP by scheduling and convening an IEP meeting within fifteen (15) days of the receipt of the test results or within forty-five (45) schooldays of the entry of this Order, with appropriate membership and parental notification to draft necessary changes.

*Id.* at 20-21.

The parents filed a complaint in this Court on April 18, 2005, challenging the decision of the IHO.  On July 22, 2005, the parents filed a motion to submit additional evidence.  The Board challenged the parents' motion and in an Order dated December 13, 2005, the Court granted the plaintiffs' motion for additional evidence.  The parties subsequently began limited discovery in accordance with the Court's Order.  Additionally, in an Order dated December 13, 2005, the Court, finding that the parents' 2003 and 2005 complaints involved common questions of law and fact, consolidated the actions for review.  The parties filed cross-motions for summary judgment on May 5, 2006.  The Court held oral argument from the parities on their motions on July 25, 2006.

## III.
## Standard of Review

A party aggrieved by the decision of an IHO following a due process proceeding may bring an action in state or federal court. 20 U.S.C. § 1415(i). The Act further provides that in any action brought pursuant to 20 U.S.C. §1415(i), the court,

> (i) shall receive the records of the administrative proceedings;
>
> (ii) shall hear additional evidence at the request of a party; and
>
> (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

20 U.S.C. § 1415(i)(2)(B).

In hearing a challenge brought pursuant to the Act, this Court must "conduct a modified de novo review, giving 'due weight' to the underlying administrative proceedings." *MM v. School District of Greenville County*, 303 F.3d 523, 530-31 (4th Cir. 2002) (citing *Rowley*, 458 U.S. 176). The Fourth Circuit further instructs that administrative findings are considered to be "prima facie correct." *Hartmann v. Loudoun County Board of Education*, 118 F.3d 996, 1001 (4th Cir. 1997) (quoting *Doyle v. Arlington County School Bd.*, 953 F.2d 100, 105 (4th Cir. 1991)). Further, if the district court, after reviewing the administrative record decides not to follow the administrative findings, it is required to explain why not. *Id.* The Fourth Circuit, explaining why such weight is afforded to an administrative decision, noted:

> These principles reflect the IDEA's recognition that federal courts cannot run local schools. Local educators deserve latitude in determining the individualized education program most appropriate for a disabled child. The IDEA does not deprive these educators of the right to apply their professional judgment.

*Hartmann*, 118 F.3d at 1001.

Additionally, the Fourth Circuit has held that "the party aggrieved by the hearing officer must properly bear the burden of proving that the administrative decision was erroneous." *Michael M.*, 95 F.Supp.2d at 606 (citing *Barnett v. Fairfax County Sch. Bd*, 927 F.2d 146, 152 (4th Cir. 1991)). Therefore, the plaintiffs bear the burden of proving that the decisions of the hearing officers were erroneous.

The Supreme Court has developed a two-part test for determining whether a school has provided a disabled child with a FAPE. "First, has the State complied with the procedures set forth in the Act. And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits? If these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more." *Rowley*, 458 U.S. at 206-207. In determining whether the IEP was reasonably calculated to provide the child with some educational benefit, the Supreme Court instructed that a reviewing court should determine whether the IEP is "reasonably calculated to enable the child to achieve passing marks and advance from grade to grade." *Id.* at 188.

The Supreme Court in *Rowley* was addressing a child who had hearing difficulties but was otherwise a child of normal talents and abilities. However, as Judge Goodwin reasoned in *Bd. of Educ. of the County of Kanawha v. Michael M.*, when dealing with a child diagnosed with autism[4], "the concept 'educational benefit' must embrace more than academic subjects." 95 F.Supp.2d at

---

[4]Two experts obtained by the plaintiffs have diagnosed Robert with Asperger's Syndrome ( a form of autism); however, the school has rejected these diagnoses and instead found that Robert has a non verbal learning disorder. The parties agreed at oral argument on the cross motions for summary judgment that the actual label attached to Robert's difficulty was not vital and he would receive similar services under either categorization.

-11-

607.  In such cases, because progress in all the necessary areas are not easily quantified by grades, in order to determine whether an autistic child is receiving a FAPE, "the court must examine the IEP to determine whether it is reasonably calculated to provide benefit in academic areas and non-traditional areas critical to the child's education."  *Id.*  The Court is not required to find that a child has been provided a FAPE simply because the child has received passing grades or shown minimal improvement on some test scores.  *Hall v. Vance County Bd. of Educ.*, 774 F.2d 629, 636 (4th Cir. 1985).  The Supreme Court in "*Rowley* recognized that a FAPE must be tailored to the individual child's capabilities."  *Id*.  While a child's passing marks and his promotion from grade to grade may be a strong indicator of whether they are not the only evidence a court can use to determine that a child is receiving educational benefit.  *Id.*[5]

The plaintiffs contend that the No Child Left Behind Act imposes additional obligations on the District in regards the level of educational benefit required by the IDEA.  While the statutory language of 20 U.S.C. § 6311 requires that state plans are coordinated with the IDEA along with other programs under Title 20, such as the Carl D. Perkins Vocational and Technical Education Act of 1998, the Head Start Act, the Adult Education and Family Literacy Act, and the McKinney-Vento Homeless Assistance Act, there is no language in the Act that places additional obligations on the development or assessment of a child's IEP.  Rather, § 6311 places responsibility on the state to adopt "challenging academic content standards and challenging student academic achievement standards" to carry out the state's plan under the Act.  The obligations contained in the section

---

[5]A court may also consider evidence of how a child did during the subsequent school year in determining whether the "IEP's goals and methodology at the time of its creation" were reasonably calculated to confer and educational benefit.  *County School Bd. of Henrico County, Virginia v. R.T.*, 433 F.Supp.2d 657, 675 (E.D. Va. 2006).

referenced by the plaintiffs are placed on the state in regards to all students.  It does not contain specific obligations to children with disabilities nor does it alter the Court's standard of review in regards to the IEP in question. The plaintiffs have not made a procedural objection to the 2004/2005 IEP or in regards to their request for reimbursement of their Independent Evaluation.

**IV.**
**Analysis**

**A.      Independent Evaluations**

The plaintiffs seek reimbursement for an Independent Education Evaluations (IEE) conducted by Dr. Kay on February 28, 2003.  Robert received a comprehensive neuropsychological evaluation by Dr. Thomas Linz in October and November, 2002; however, Robert's parents were not satisfied with the results of the evaluation.   They believed that the evaluation was not comprehensive in nature and requested an IEE.

The parents of a child with a disability have the right to request an IEE at public expense if they disagree with the evaluation obtained by the public agency.  *See* 34 C.F.R. 300.502(b)(1).  If a parent requests an IEE at public expense, the public agency must either provide the IEE or request a due process hearing to determine if its evaluation is appropriate.  34 C.F.R. 300.502(b)(2).  Where it is determined that the public agency's evaluation was appropriate, the parents may still obtain an IEE at their own expense.  34 C.F.R. 300.502(b)(3).  Additionally, where a parent does obtain an IEE at their own expense, the public agency is required to considered the evaluation, "if it meets agency criteria, in any decision made with respect to the provision of FAPE to the child." 34 C.F.R. 300.502(c).  However, where the public agency's evaluation has been determined after a due process

hearing to be appropriate, there is no obligation for the agency to reimburse parents for an IEE obtained at private expense simply because it was used in the development of the child's IEP.

The IHO reviewed the evaluation of Dr. Linz and found that the evaluation was comprehensive and thorough.  The IHO found that Dr. Linz used numerous instruments for the purposes of evaluation: Gordon Diagnostic System: Vigilance and Delay subtests; Wisconsin Card Sorting Test-64; Trail Making Test: Parts A & B; d2 Test of Attention; Rey Complex Figure: Copy and Delayed Recall; Grooved Pegboard; Judgement of Line Orientation Test; Behavior Assessment System for Children, Self Report; and an interview with parents and their written observations. Additionally, Dr. Linz considered previous evaluations and tests.  The IHO also relied on expert testimony from Mr. Burrell and Ms. Cook, School Psychologists employed by the Local Education Authority (LEA), who opined that the tools employed by Dr. Linz were technically sound.  Mr. Burrell and Ms. Cook also testified that assessment tools and strategies used by Dr. Linz were comprehensive and produced the necessary, relevant information to assist the LEA in providing Robert with a FAPE.

At the time of the due process hearing, one of the parents chief complaints was that Dr. Linz did not use the Diagnostic and  Statistical Manual of Mental Disorders, 1994, 4th ed. (DSM-IV) to determine that Robert did not have Asperger's Syndrome.  Robert had previously been evaluated by Sandi Kiser-Griffith, who utilized the DSM-IV and diagnosed Robert with Asperger's.  While Dr. Linz did not perform the DSM-IV evaluationon Robert, he did review and consider the results obtained by Ms. Kiser-Griffith.  The IHO found that the fact that Dr. Linz reached a different conclusion than Ms. Kiser-Griffth did not invalidate his evaluation.

The Court has reviewed the 2003 decision of the IHO and the record and finds that the plaintiffs have provided insufficient evidence to show that the evaluation performed by Dr. Linz was inadequate.  Additionally, the plaintiffs contend that when they requested reimbursement for Dr. Kay's 2003 evaluation, the Board informed them that it did not have to pay for evaluation unilaterally obtained by parents. Following the evaluation performed by Dr. Linz, the parents requested an IEE and in accordance with the regulations, the Board requested a due process hearing to show that its evaluation was appropriate.  The IHO held a hearing on the question on February 2, 2003.  However, without waiting for the decision of the IHO as to whether they were entitled to an IEE at public expense, the parents unilaterally obtained an IEE from Dr. Kay on February 28, 2003.  While the evaluation performed by Dr. Kay was not considered by the IHO, the IHO did determine that the evaluation of Dr. Linz was appropriate, thereby extinguishing the parents' right for reimbursement for an IEE at that time, regardless of whether it was unilaterally obtained.

The parents also seek reimbursement for Robert's re-evaluation performed by Dr. Kay on March 9, 2004, approximately one month prior to Mr. Burrell's triennial re-evaluation.  The IEP dated May 26, 2004  identifies Dr. Kay's evaluation as one of the sources of information.  The IEP also notes that Dr. Burrell's evaluation was a source of information and does not refer specifically to either evaluation's findings or results. The IHO later determined that the 2004 IEP failed to adequately assess Robert's educational achievement levels, implicitly finding that neither psychologists' evaluations supplied the needed testing.  Thus, even if the Board's evaluation was inadequate, Dr. Kay's evaluation was not sufficient to fill the gap.  Consequently, the Court cannot find the expense reimbursable.

**B.**     **2004 IEP and IHO Decision**

The IHO concluded that the IEP was sufficient but directed additional testing to document the student's level of academic achievement through objective, standardized tests.  In her brief discussion of this point, the IHO noted that Robert's past achievement tests showed some gains but also declines in his academic progress.  She rejected the claim that Robert's teachers had inflated his grades just to pass him, but she found that standardized, objective tests were necessary to measure his specific subject area mastery.  Despite this deficiency in the IEP, the IHO upheld the IEP.  The Court finds this reasoning flawed.  If the IEP fails to assess the "child's present levels of academic achievement and functional performance," the IEP does not comply with §1414.  This deficiency goes to the heart of the IEP; the child's level of academic achievement and functional performance is the foundation on which the IEP must be built.  Without a clear identification of Robert's present levels, the IEP cannot set measurable goals, evaluate the child's progress, and determine which educational and related services are needed.

The IHO's finding that this testing was needed is correct.  Robert's performance on objective tests revealed little real progress, academically, over the years, yet Robert advanced through grades well beyond his level of mastery in basic skills.  His teachers report academic progress despite poor results on standardized tests and their own reports of Robert doing poorly according to progress reports during grading periods.  This fundamental discrepancy - between his level of achievement as measured by objective testing and his advance through the grades - has not been addressed in the IEPs.

The testing confirms that Robert struggles with written expression, including spelling and handwriting, and with math.  Yet, the Board decided to end instruction in handwriting and/or typing.

Instead, Robert would use Dragon Speak, a software program, as an accommodation.  Also, the Board rejected individualized special education services for math.  The Board's decision in these critical areas fails to address Robert's deficiencies.  If these services cannot be provided during the regular school day, the Board is obligated to consider where and when the services may be obtained, by outside tutoring if necessary.[6]

The parties devote many pages of argument and documents concerning Robert's social skills and behavior.  Based on the evidence, the Court cannot find the IEPs or the IHO decision deficient with respect to this area.  The use of an aide and Robert's increased maturity have contributed to significant improvement in his behavior.  The observations of his teachers that Robert's social skills have improved are not contradicted by substantial evidence. Clearly, having an aide has helped and may still be appropriate, but the Court leaves that matter to the parties to address in the current IEP process.

Overall, the Court finds the IEPs exhibit a good-faith and constructive effort by the Board to address Robert's unique circumstances while remaining in the publc school. Robert has much potential and has demonstrated considerable achievement in some subject areas.  However, core skills such as reading, spelling, written expression and math lag in development and jeopardize Robert's ability to achieve the goals he, his parents, and the Board agree are within his reach. The Court **FINDS** that the 2004 IEP failed to provide a FAPE to Robert and the IHO decision wrongly concluded as much.  For these reasons, the Court directed the parties to reconvene an IEP meeting

_____

[6]The post-IHO evidence includes the IEP written after the standardized testing.  Rather than identifying measurable annual goals, criteria for evaluating progress, and a description of the needed special education and related services, the IEP focuses on accommodations aimed at making tests easier for Robert to pass.

with a facilitator to develop an IEP which considers Robert's current levels of achievement and functional performance with a specific plan to address his deficiencies.

## C.     Pathway School Placement

One of the primary requests of the plaintiffs is that Robert be placed in a residential special education facility, specifically the Pathway School in Pennsylvania.  Placement at the Pathway School was recommended to the plaintiffs by Dr. Kay who felt that because of the little progress Robert has made in the public school and because of Robert's age and the limited time left to effect change, a 24-hour intensive program was necessary.  Because the parents seek placement, they bear the burden of showing that the Board has failed to provide a FAPE and that placement at the Pathway School is appropriate.  *See School Comm. of Town of Burlington*, 471 U.S. at 369-70.

The IDEA requires that the disabled child be placed in the least restrictive environment (LRE). Under the Act that is intended to be, where possible, in public schools and by participating as much as possible in the same activities as nondisabled children.  *School Committee of Town of Burlington, Mass. v. Department of Educ. of Mass.,* 471 U.S. at 369.  The Fourth Circuit has articulated the following test for determining when mainstreaming is not necessary:

> (1)     the disabled child would not receive an eduational benedfit from mainstreaming into a regular class;
>
> (2)     any marginal benefit from mainstreaming would be significantly outweighed by benefits which could feasibly be obtained only in a separate instructional setting; or
>
> (3)     the disabled child is disruptive force in a regular classroom setting.

-18-

*Hartmann v. Loudoun County Board of Education*, 118 F.3d at 1001.   The IHO found that there was insufficient evidence to show that Robert was a disruptive force in his classrooms nor was there sufficient credible evidence that the benefit that Robert does receive in his regular classes would be outweighed by any benefits that he could receive at a residential placement.

Even though the plaintiffs have provided sufficient evidence to show that the 2004/2005 IEP fails to provide Robert with a FAPE, the plaintiffs have failed to provide enough evidence to meet their burden of proof regarding an out of district placement.   The Court's review of Dr. Kay's testimony  reveals that she recommends the services that may be necessary for Robert to meet his maximum potential but exceed the duty imposed by the IDEA.   The Court discounts Dr. Kay's testimony because she is relying on an incorrect standard.   The District is only required to provide Robert with some educational benefit, not the potentially maximum benefit.   While the Court recognizes that there may be some deficiencies in the IHO decision and the IEP, it is evident that the Board has substantial resources and expertise necessary to develop and implement an appropriate plan for Robert.   The Court does not find that the Pathway School is the appropriate placement for Robert nor would it be the LRE.   Though the Board has failed to develop an IEP that is reasonably calculated to provide Robert with an educational benefit, the plaintiffs have presented insufficient evidence that the Board lacks the resources or ability, after an appropriate plan has been developed, to provide Robert with an education benefit.

**D.      Reimbursement for broken eye glasses and private tutoring**

The plaintiffs also seek reimbursement for private one-on-one reading tutoring in the Wilson Reading Program unilaterally obtained by the parents from Marshall University.   Again, the

plaintiffs rely on the recommendation of Dr. Kay to support the need for one-on-one tutoring.  Dr. Kay reasoned that "Robert requires an individualized program of one-to-one instruction using a synthetic, phonetic, code-emphasis technique to improve his reading decoding and spelling encoding skills.  This should be delivered intensively in  a one-to-one tutorial session on a daily basis with a trained expert."   However, the school rejected numerous requests from the plaintiffs for reimbursement and the IHO in her 2004 decision found that there was insufficient evidence to justify reimbursement.  After a review of the record and the additional evidence, the Court finds no evidence to overturn the IHO's decision.  The Board included the Wilson Reading Program in Robert's 2004/2005 IEP and the parents have presented insufficient evidence that it was the private tutoring that produced Robert's success with the program.  The plaintiffs have failed to show that Robert would not have made the same progress in the Wilson Reading Program without the private tutoring.  Therefore, the Court concurs with the decision of the IHO that there is insufficient evidence to justify reimbursement for the private tutoring.

The plaintiffs additionally seek reimbursement for the cost of Robert's glasses which the plaintiffs contend were broken following an altercation at school.  The plaintiffs argue that Robert's IEP required him to be escorted to classes by a teacher or peer and, because his glasses were broken during school hours, the school failed to provide the services promised.  The IHO determined the plaintiffs have provided insufficient evidence to support reimbursement, and the Court agrees.

## IV.
## Conclusion

For the reasons stated, the Court finds the IHO should not have sustained the 2004/2005 IEP after concluding it did not assess Robert's current levels of academic achievement. To that extent,

the IHO decision did not appropriately evaluate the underlying IEP, which the Court finds failed to provide Robert with the services to which he is entitled.  The Court does not disturb the IHO finding that placement at the Pathways School is inappropriate.  Accordingly, the Court enters partial summary judgment in favor of the Plaintiffs and partial summary judgment in favor of the Defendants and retains jurisdiction to oversee the development of a new IEP for Robert. The Court **DIRECTS** the Clerk to send a copy of this written opinion and order to counsel of record and any unrepresented parties.

ENTER:          September 19, 2006

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE